UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KATHY PICARD, | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Case No. 14-CV-30115-KAR |
| | ) | |
| LOUIS BUONICONTI, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS JUDGMENT
(Dkt. No. 120)
February 17, 2016

ROBERTSON, U.S.M.J.

I. Introduction

On November 5, 2015, a jury returned a verdict in favor of Plaintiff Kathy Picard on all four counts of her complaint and awarded her $250,000.00 in compensatory damages. The court entered judgment on the same date. On December 3, 2015, Defendant filed a "Motion to Dismiss Judgement" (Dkt. No. 120), which Plaintiff has opposed (Dkt. No. 121). For the following reasons, Defendant's motion is DENIED.

II. Discussion

A. Procedural Posture

Defendant, proceeding *pro se*, fails to identify the procedural basis for his motion. Motions seeking relief from judgment entered following a jury trial can fall under Fed. R. Civ. P. 59(e) or 60(b).

"Rule 59 provides that a new trial may be granted in a jury action for any reason for which new trials were granted at common law." *Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281, 283 (1st Cir. 1993). *See also* Fed. R. Civ. P. 59(a)(1)(A). "When considering a Rule 59(a) motion, 'a district court may set aside a jury's verdict and order a new trial only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant

miscarriage of justice.'" *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 565 (1st Cir. 2003) (quoting

*Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 717 (1st Cir.1994)).  "'[M]otions for a new trial

[under Rule 59(a)] are directed to the trial court's discretion and this remedy is sparingly used.'"

*Dall v. Coffin*, 970 F.2d 964, 969 (1st Cir. 1992) (quoting *United States v. Rivera–Sola,* 713 F.2d

866, 874 (1st Cir.1983)).  "[D]eference must be accorded to a jury's verdict; it should not be

overturned except 'under most compelling of circumstances' where it is seriously erroneous."

*Bell v. Potter*, 234 F. Supp. 2d 91, 100 (D. Mass. 2002) (quoting *Flores–Suarez v. Turabo Med.*

*Ctr.,* 165 F. Supp. 2d 79, 85 (D.P.R. 2001)).  Rule 59 motions must be filed within 28 days after

entry of judgment.  Fed. R. Civ. P. 59(b).

Rule 60(b) allows a court to relieve a party from final judgement "for the following

[pertinent] reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly

discovered evidence that, with reasonable diligence, could not have been discovered in time to

move for a new trial under Rule 59(b); (3) fraud …; … or (6) any other reason that justifies

relief."  Fed. R. Civ. P. 60(b).  "[I]n general … the grounds for relief from judgment under Rule

60(b) may also be grounds for a new trial under Rule 59, if the motion is timely made."  *Perez-*

*Perez*, 993 F.2d at 283 (citing 11 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL

§§ 2805–2810 (1973)).  "In other words, the litigant who gets his motion in on time enjoys the

full menu of grounds for relief provided by Rule 59; if not, he is confined to the … specific

grounds of relief found in Rule 60(b)."  *Id*. at 284.

The "inquiry into the character of the motion is a functional one:  'nomenclature should

not be exalted over substance.'"  *Perez-Perez*, 993 F.2d at 283 (quoting *Echevarria-Gonzalez v.*

*Gonzalez-Chapel*, 849 F.2d 24, 26 (1st Cir. 1998)).  In situations such as this where a motion is

timely under Rule 59(b), it is appropriate to construe it as a motion for a new trial under Rule

59(a).  *Id.  See also Fryer v. A.S.A.P. Fire and Safety Corp.*, No. 09-10178-MBB, 2010 WL

3191785, at *5 n.11 (D. Mass. Aug. 12, 2010) ("Because the … motion is timely under Rule 59(b) and does not refer to Rule 60, it is not appropriate to construe the motion as seeking relief from a judgment or order under Rule 60."). Thus, the court interprets Defendant's motion as seeking relief pursuant to Fed. R. Civ. P. 59(a).

B. <u>Defendant's Arguments for Relief</u>

Defendant raises five grounds for relief in separately numbered paragraphs. The first two grounds relate to concerns about a lack of juror impartiality. The second two relate to credibility concerns with respect to two of Plaintiff's witnesses. The final ground consists of a non-particularized claim of misconduct by Plaintiff, which Defendant claims he was unable to expose due to his *pro se* status.

1. <u>Arguments Relating to the Jury</u>

Defendant complains that Plaintiff and her counsel "MALICIOUSLY ATTACKED" him publicly on "MASS LIVE" on November 1, 2015, the day before trial commenced, and as a result he was denied a fair trial (Dkt. No. 120 at p. 1). Defendant also claims that during jury selection, his daughter, Darlene Nicely – who was present with and assisted him throughout the trial, including the entire jury selection process – "stated that we grew-up with JURROR [sic] NO 1 BOSS and [Plaintiff's counsel and Plaintiff] sat there and said 'NOTHING' kept to themselves and FAILED to disclose a key information THAT [Plaintiff] HAS JUROR NO 1 BOSS ON HER FACEBOOK AND HIS SISTER … That's public knowledge anyone can get." Defendant argues that "JUROR NO 1 – SHOULD OF NEVER BEEN PICKED IF THAT WAS DISCLOSED."

"A party seeking a new trial because of non-disclosure … during *voir dire* must do more than raise a speculative allegation that the juror's possible bias may have influenced the outcome of the trial. Rather, 'a party must first demonstrate that a juror failed to answer honestly a

material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause.'" *Dall*, 970 F.2d at 969 (quoting *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556 (1984)). Additionally, the party "must 'demonstrate actual prejudice or bias.'" *Id*. (quoting *United States v. Aponte–Suarez,* 905 F.2d 483, 492 (1st Cir.1990)). "This 'burden of proof must be sustained not as a matter of speculation, but as a demonstrable reality.'" *Id*. (quoting *United States v. Vargas,* 606 F.2d 341, 344 (1st Cir.1979)).

Defendant raised his concern about the online news article with the court before jury selection began. As a result, the court asked the jurors not only whether they had heard or read anything about the case generally, but also whether they had heard or read anything about the case on MassLive.com,[1] specifically. All eight seated jurors denied having heard or read anything about the case, including on MassLive.com. Defendant has not demonstrated that any of the eight failed to answer honestly. Moreover, Defendant has not demonstrated any actual prejudice or bias, and the mere fact that a case receives media coverage is insufficient to give rise to a presumption of prejudice. *United States v. Tsarnaev*, No. 13-10200-GAO, 2014 WL 4823882, at *1 (D. Mass. Sept. 24, 2014). This is true even in cases where there is extensive media attention. *See id*. at *2. "'[P]rominence does not necessarily produce prejudice, and juror *impartiality* does not require *ignorance*.'" *Id*. (quoting *Skilling v. United States,* 561 U.S. 358, 360–61 (2010) (emphasis in original)). "'It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Id*. (quoting *Irvin v. Dowd,* 366 U.S. 717, 723 (1961)).

Defendant did not raise any concerns about Juror No. 1 until the instant motion. During

---

[1] "Mass.Live.com" is a western Massachusetts news and information website affiliated with the print newspaper, *The Republican*.

voir dire, Juror No. 1 denied knowing the parties or any of the prospective witnesses.  Defendant

has not shown that Juror No. 1 improperly answered this question.  Even crediting Defendant's

claim that the juror's boss "grew-up" with Plaintiff and Ms. Nicely (despite the lack of any

actual evidence of it before the court), it does not follow that Juror No. 1 himself knew Plaintiff

or Ms. Nicely.  Nor did Defendant request any follow-up questions of Juror No. 1 in an effort to

determine if he knew that his boss knew Plaintiff or Ms. Nicely.  "Jurors cannot be faulted for

failing to disclose information for which they were never asked."  *Dall*, 970 F.2d at 969-70

(citing *Aponte–Suarez,* 905 F.2d at 492, and *Rivera–Sola,* 713 F.2d at 874).  Thus, there is no fair

basis for asserting that Juror No. 1 improperly answered any material question.  Moreover,

Defendant has not provided a basis for a successful challenge for cause or shown that he suffered

actual prejudice.  Finally, Plaintiff was under no obligation to advise the court or Defendant that

she was associated with the juror's boss on social media, if indeed she was and if she was aware

of the connection.

2.   Arguments Relating to Two of Plaintiff's Witnesses

Defendant argues that he "truely [sic] believe[s]" that his brother, Julio Buoniconti, was

continuously called, harassed, and threatened with jail time by Retired Granby Police Chief

Louis Barry, and that, as a result, he lied on the stand.  It is unclear when Defendant purportedly

became aware of information giving rise to his belief that his brother was threatened.

To the extent it was before his brother testified, Defendant had the opportunity to cross-

examine his brother in the presence of the jury and develop any bias or motive he might have had

to lie at that time.  It was the sole province of the jury to judge credibility.  *Blake v. Pellegrino*,

329 F.3d 43, 47-48 (1st Cir. 2003).

To the extent it was after the trial, his claim is essentially that he is entitled to a new trial

based on newly discovered evidence.  "An order for a new trial on the ground of newly

discovered evidence requires proof of the following elements: (1) The evidence has been discovered since the trial; (2) The evidence could not by due diligence have been discovered earlier by the movant; (3) The evidence is not merely cumulative or impeaching; and (4) The evidence is of such nature that it would probably change the result if a new trial is granted." *Kettenback v. Demoulas*, 901 F. Supp. 486, 493 (1985) (quoting *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1527 (1st Cir.1991)).  In order to satisfy the final prong, "the newly discovered evidence must be both admissible and credible, and of such a nature that it would probably change the outcome."  *Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1, 8 (D.D.C. 2000).

Defendant's motion does not clear these hurdles.  First, Defendant fails to demonstrate that, with the exercise of due diligence, he could not have discovered the so-called evidence in time to present it in the original proceeding.  Second, the newly discovered evidence would be merely impeachment evidence of Julio Buoniconti's trial testimony.  Third, no matter how fervent Defendant's belief may be, Defendant has proffered no admissible evidence that Julio Buoniconti was threatened by Mr. Barry in connection with his testimony or that he lied on the stand.  Finally, even if Defendant had admissible evidence to offer, it would be unlikely to change the outcome of the trial.  Defendant denied Plaintiff's allegations during trial and testified as to his brother's lack of truthfulness on the stand.  The jury clearly believed Plaintiff and disbelieved Defendant.  There is no reason to conclude that if Defendant also testified to his belief that his brother had been threatened to provide his testimony, the jury would have discredited Plaintiff's testimony in favor of Defendant's.

Defendant next claims that Bart Nierenberg, LICSW, who testified as a fact and expert witness for Plaintiff, had a conflict of interest because he worked for the post office in its employee assistance program ("EAP"), and another of Defendant's daughters, Charlene Lussier, had "been into therpy [sic] with Mr. Nierenberg ON MANY OCCASION" (Dkt. No. 120, at p.

2). Again, Defendant does not say when he learned of this information. If it was before the trial, Defendant had the opportunity to develop any bias or prejudice Mr. Nierenberg may have had as a result of it on cross-examination. Defendant also could have solicited testimony regarding the alleged relationship from Ms. Lussier, who he called as a witness in his case.

Even if Defendant did not learn of the supposed relationship until after trial, however, he is not entitled to a new trial on grounds of newly discovered evidence. Defendant cannot claim to have been surprised by Mr. Nierenberg's work as an EAP counselor for the post office. He knew about Mr. Nierenberg's work for the post office before trial, and Mr. Nierenberg testified about that work in the trial. If Ms. Lussier received therapy from Mr. Nierenberg through the EAP, Defendant cannot show that he could not have discovered this evidence through the exercise of due diligence in time to present it at trial. Ms. Lussier is Defendant's daughter, and he called her as a witness in his case. Moreover, even accepting Defendant's theory that evidence of the therapeutic relationship would somehow go to bias or prejudice, it would merely be impeaching of Mr. Nierenberg's testimony and would not entitle Defendant to a new trial, and the court concludes with little difficulty that it would not be of such nature that it would change the outcome of the trial.

### 3. Argument Relating to Fraud by Plaintiff

Finally, Defendant claims that "[t]he only way to seek the RIGHT JUDGMENT is to DISMISS THE WHOLE CASE ENTIRELY," because of the "Lies" and "Manipulations" of Plaintiff and her counsel, which Defendant was not able to "pick[]-up on" because he was not able to afford a lawyer (Dkt. No. 120 at p. 2). In order to obtain a new trial on the basis of fraud by the opposing party, "the movant must demonstrate misconduct – such as fraud or misrepresentation – by clear and convincing evidence," and "'must show that the misconduct foreclosed full and fair preparation or presentation of [his] case.'" *Karak v. Bursaw Oil Corp.*,

288 F.3d 15, 21 (1st Cir. 2002) (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988)).  Defendant, quite simply, has shown neither.

Not surprisingly, Defendant is dissatisfied with the jury's verdict, and the court understands that he may have felt at a disadvantage due to his self-represented status.  However, that is not a basis for relieving Defendant from the judgment entered on the jury's verdict.  "As a general rule, [the court] look[s] with disfavor on requests by *pro se* litigants for special consideration."  *Belber v. Lipson*, 905 F.2d 549, 553 (1st Cir. 1990).  This case presents no occasion for departing from that general rule.

III.   Conclusion

"Considering the strong policy against the too-ready impeachment of jury verdicts on the basis of such after-thoughts suggested by a disappointed litigant," *Peterman v. Indian Motorcycle Co.*, 216 F.2d 289, 293 (1st Cir. 1954), the court, in its discretion, declines to grant a new trial on any of the grounds advanced by Defendant.  For all the reasons stated, Defendant's motion to dismiss judgment (Dkt. No. 120) is DENIED.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge